1
2
3
4
5               UNITED STATES DISTRICT COURT
6               EASTERN DISTRICT OF WASHINGTON
7
8  IVY L. COWAN,                        No. CV-13-0051-JTR
9
         Plaintiff,                    ORDER GRANTING PLAINTIFF'S
10                                      MOTION FOR SUMMARY
11         v.                           JUDGMENT AND REMANDING
                                        FOR ADDITIONAL PROCEEDINGS
12  CAROLYN W. COLVIN,
13  Commissioner of Social Security,
14
         Defendant.
15
16

17         **BEFORE THE COURT** are Cross-Motions for Summary Judgment.  ECF
18  No. 14, 21.  Attorney Dana C. Madsen represents Ivy L. Cowan (Plaintiff); Special
19  Assistant United States Attorney Summer Stinson represents the Commissioner of
20  Social Security (Defendant).  The parties have consented to proceed before a
21  magistrate judge.  ECF No. 6.  After reviewing the administrative record and briefs
22  filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary
23  Judgment, **DENIES** Defendant's Motion for Summary Judgment, and remands the
24  matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. §
25  405(g).
26                          **JURISDICTION**
27         Plaintiff protectively filed an application for Supplemental Security Income
28  Benefits on August 11, 2010, alleging disability since August 11, 2010, due to

ORDER GRANTING PLAINTIFF'S MOTION . . . - 1

lower back degenerative disk disease.  Tr. 167, 181.  The application was denied initially and upon reconsideration.  Administrative Law Judge (ALJ) R.J. Payne held a hearing on October 3, 2011, Tr. 44-100, and issued an unfavorable decision on October 14, 2011, Tr. 23-33.  The Appeals Council denied review on December 4, 2012.  Tr. 1-6.  The ALJ's October 2011 decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review on January 31, 2013.  ECF No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties.  They are only briefly summarized here.

Plaintiff was born on November 4, 1966, and was 43 years old on the alleged onset date, August 11, 2010.  Tr. 167.  She completed high school and also has about one year of training in basic computer skills from the Adult Education Center.  Tr. 67-68.  Plaintiff indicated she last worked from September 2005 to April 2006 doing paint touch up at a sheet metal fabrication company.  Tr. 68-69.  That job reportedly ended as a result of her being laid off.  Tr. 68, 70.  Plaintiff indicated in her "Disability Report" that she stopped working at that time because she was "a full time housewife."  Tr. 181.

Plaintiff testified at the administrative hearing that she hurt her back in 2003 while working at a daycare and is currently unable to work due to back pain and numbness in her legs.  Tr. 71, 78.  Plaintiff further stated she has difficulty with sleep at night due to back pain, Tr. 77-78, and has constant headaches, Tr. 87.  She also reported mental impairments of depression, anxiety and severe anger.  Tr. 91.  Plaintiff testified that while she has tried marijuana in the past for her migraines and obtained a medical marijuana card at one point, she did not use marijuana on a regular basis.  Tr. 94.

Margaret Moore, Ph.D., testified as a medical expert at the hearing held on October 3, 2011.  Tr. 54-65.  Dr. Moore noted Plaintiff did not have a history of mental health treatment[1] and indicated the record reflected the cluster of diagnoses related to depression, anxiety, personality disorder and substance abuse.  Tr. 58. She testified the record reflected fairly regular marijuana use and a history of other kinds of substance abuse and indicated that was "part of that same cluster of folks who instead of developing coping skills, they move towards drugs or alcohol or both to help them through the rough times."  Tr. 61.  Dr. Moore stated that "by and large, I see someone who is dysthymic and dependent and kind of stuck in that role."  Tr. 61.  She opined that Plaintiff's mental health impairments were not severe enough to meet or equal a listings impairment.[2]  Tr. 61-62.  She testified that Plaintiff had no limitations on activities of daily living and was mildly to moderately limited in maintaining social functioning and maintaining concentration, persistence and pace.  Tr. 63.

With respect to other medical professionals of record, Dr. Moore referred to Dr. Jackline's consultative exam as "rather unusual" and criticized Dr. Jackline for endorsing virtually every symptom proposed to him by Plaintiff.  Tr. 60, 62.  With regard to the reports of Drs. Dalley and Greene, Dr. Moore indicated she found the narrative sections of those evaluations were more helpful in formulating an understanding of Plaintiff's condition than the boxes checked on those reports.  Tr. 65.

///

---

[1]However, at the time of the hearing, Plaintiff had received mental health treatment and counseling at the CHAS Clinic in Spokane, Washington.  Tr. 55, 345-361.

[2]Plaintiff's counsel stipulated at the administrative hearing that no listing had been met or equaled in this case.  Tr. 99.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

## ADMINISTRATIVE DECISION

The ALJ found that Plaintiff had not engaged in substantial gainful activity since August 11, 2010, the application date. Tr. 25. The ALJ determined, at step two, that Plaintiff had the following severe impairments: low back pain, degenerative disc disease, depression, posttraumatic stress disorder, borderline personality disorder, and anxiety. Tr. 25. At step three, the ALJ found Plaintiff's severe impairments did not meet or medically equal a listed impairment. Tr. 25. The ALJ assessed Plaintiff's RFC and determined she could perform light exertion level work with the following limitations: she could occasionally climb ladders, ropes and scaffolds; could occasionally stoop and crouch; and would have occasional but not frequent difficulty maintaining attention and concentration for extended periods of time, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes, responding appropriately to changes in the work setting, and establishing realistic goals or making plans independently of others. Tr. 28.

At step four, the ALJ concluded Plaintiff was able to perform her past relevant work as a Powder Coat Worker. Tr. 32. Alternatively, at step five, the ALJ found that, considering Plaintiff's age, education, work experience and RFC, Plaintiff was able to perform work existing in significant numbers in the national economy. Tr. 32-33. The ALJ thus determined that Plaintiff was not under a disability within the meaning of the Social Security Act at any time from August 11, 2010, the application date, through the date of the ALJ's decision, October 14, 2011. Tr. 29.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the Court set out the standard of review:

A district court's order upholding the Commissioner's denial of benefits is reviewed de novo. *Harman v. Apfel*, 211 F.3d 1172, 1174 (9th Cir. 2000). The

decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed de novo, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett,* 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988). If substantial evidence exists to support the administrative findings, or if conflicting evidence exists that will support a finding of either disability or non-disability, the Commissioner's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

///

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-1099. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(i-v), 416.920(a)(4)(i-v).

## ISSUES

The question presented is whether substantial evidence exists to support the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.

Plaintiff contends the ALJ erred because she is more limited from a psychological standpoint than what was determined by the ALJ. ECF No. 14 at 6. With respect to her psychological limitations, Plaintiff specifically argues the ALJ failed to properly consider the opinions of examining medical professionals and instead relied only on the testimony of non-examining, non-treating medical professionals. ECF No. 14 at 6-11. Plaintiff further asserts the ALJ erred at step four of the sequential evaluation process by failing to call a vocational expert to discuss her non-exertional impairments. ECF No. 14 at 11.

///

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

**DISCUSSION**

**A.    Medical Evidence**

Plaintiff argues the ALJ erred by giving significant weight to the opinions of non-examining, non-treating medical professionals and failing to accord proper weight to the opinions of examining medical professionals regarding Plaintiff's mental condition.  ECF No. 14 at 6-11.

In disability proceedings, an examining physician's opinion is given more weight than that of a non-examining physician.  *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  If the examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons.  *Lester*, 81 F.3d at 830.  If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons that are supported by substantial evidence in the record.  *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).  However, the Ninth Circuit has held that "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  *Lester*, 81 F.3d at 830.   An ALJ's decision to reject the opinion of a treating or examining physician may be based in part on the testimony of a non-examining medical advisor, but the ALJ must also have other evidence to support the decision such as laboratory test results, contrary reports from examining or treating physicians, or testimony from the claimant that was inconsistent with the physician's opinion.  *See Andrews*, 53 F.3d at 1042-1043.

On August 5, 2010, Plaintiff was first examined by William Greene, Ph.D. Tr. 239-251.  It was noted that Plaintiff reported no history of psychiatric hospitalizations and no history of counseling.  Tr. 239.  Dr. Greene marked on a check-box form that Plaintiff was severely limited in her ability to exercise judgment and make decisions and was markedly limited in her abilities to relate appropriately to co-workers and supervisors and to maintain appropriate behavior

in a work setting.  Tr. 242-243.   He wrote that Plaintiff's personal life is in such turmoil at the present time (her grandson had recently died, her son was being accused of the death through abuse and shaken baby syndrome, and she was currently in the process of divorce from her third husband) that counseling was recommended to help her focus and make more structured plans for her future.  Tr. 239, 243.  "Whether it would improve her ability to work would depend on [Plaintiff's] desire to turn her life around."  Tr. 243.  Dr. Greene opined that her impairments were expected to last a maximum of six months,[3] and he expected Plaintiff would be able to return to work when her symptoms resolved. Tr. 244-245.

On December 15, 2010, William H. Jackline, Ed.D., NCSP, examined Plaintiff.  Tr. 268-275.  He determined that Plaintiff's ability to understand, remember and follow simple directions was adequate; ability to understand, remember and follow increasingly lengthy, fast-paced and complex verbal information and directions was mildly to moderately impaired; abstract verbal reasoning skills were moderately impaired; ability to sustain her concentration and persist at a task was mildly to moderately impaired; social interactive skills were moderately impaired; and ability to independently and quickly adapt to changes within her environment was moderately impaired.  Tr. 274.  Dr. Jackline opined that Plaintiff's prognosis for improving her current levels of psychological and social functioning appeared to be poor.  Tr. 274.

On December 16, 2010, state agency medical professional Dan Donahue, Ph.D., reviewed the record and filled out a mental residual functional capacity assessment form and psychiatric review technique form.  Tr. 276-293.  Dr. Donahue found no marked limitations, but noted moderate limitations in Plaintiff's

_____

[3]Dr. Greene's assessed mental limitations would thus not meet the duration requirements of the Act (one year).  42 U.S.C. § 1382c(a)(3)(A).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

abilities to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.  Tr. 276-277.  With respect to functional limitations, Dr. Donahue determined Plaintiff had mild restrictions of activities of daily living, moderate difficulties in maintain social functioning, moderate difficulties in maintaining concentration, persistence and pace, and one or two episodes of decompensation.  Tr. 290.  He opined that Plaintiff had an adequate ability in the areas of understanding and memory for simple types of work, her ability to sustain concentration, persistence and pace was adequate for simple, basic types of work related tasks, and, although she did have some difficulty in social areas, those social difficulties would not preclude successful work at a basic level.  Tr. 278.  State agency medical professional Sharon Underwood, Ph.D., reviewed the record on February 16, 2011, and affirmed Dr. Donahue's conclusions.  Tr. 303.

Dr. Greene examined Plaintiff a second time on March 9, 2011.  Tr. 305-316.  Dr. Greene noted several moderate and marked functional limitations, Tr. 307-308, but again indicated Plaintiff's impairments were only expected to last a maximum of six months, Tr. 308.  He opined that counseling, medication and some classes for homemakers returning to the workforce would be helpful and that Plaintiff should be able to return to work when her symptoms resolved.  Tr. 308-309.  Dr. Greene recommended Plaintiff apply for work at Goodwill Industries.  Tr. 308-309.

On August 23, 2011, Mahlon Dalley, Ph.D., examined Plaintiff.  Tr. 318-325.  It was noted that Plaintiff reported she smoked marijuana on a nightly basis to reduce pain and help with migraines.  Tr. 320, 323.  Dr. Dalley noted several

moderate and marked functional limitations and "highly recommended" counseling to deal with her past issues and current anxiety/depression issues.  Tr. 321.  He opined that Plaintiff's depressive and PTSD symptoms, features of her personality disorder, and health concerns were likely to interfere with her ability to be successful in a normal employment position and estimated Plaintiff would be work impaired for 12 months.  Tr. 322, 325.

Dr. Moore, who had never treated or examined Plaintiff, testified as a medical expert at the hearing held on October 3, 2011.  Tr. 54-65.  Dr. Moore noted Plaintiff did not have a history of mental health treatment, Tr. 58, and opined that Plaintiff had no limitations on activities of daily living and was mildly to moderately limited in maintaining social functioning and maintaining concentration, persistence and pace, Tr. 63.  The medical advisor criticized Dr. Jackline's consultative exam, Tr. 60, 62, and indicated the narrative sections of the reports of Drs. Dalley and Greene were more helpful than the conclusions noted in the check boxes of those reports, Tr. 65.

In this case, the ALJ accorded Dr. Moore's opinion controlling weight.  Tr. 31.  The ALJ indicated that while Plaintiff reported problems getting along with people, Dr. Jackline's examination revealed that Plaintiff had at least five good friends with whom she watches movies or text messages.[4]  Tr. 27, 270.  With respect to concentration, persistence and pace, the ALJ noted that Dr. Jackline indicated Plaintiff had shown an adequate ability to understand, remember and follow simple instructions.  Tr. 27, 274.  The ALJ ultimately adopted the testimony of the medical expert and the state agency reviewer opinions to find that Plaintiff

---

[4]Dr. Jackline's report actually states that Plaintiff "related that she had at least 5 friends," but had only one really good friend she would see three or four days a week.  Tr. 270, 273.  Moreover, Dr. Jackline concluded that Plaintiff's social interactive skills were moderately impaired.  Tr. 274.

had only mild to moderate difficulties in social functioning and mild to moderate difficulties in concentration, persistence and pace. Tr. 26-27. This level of concentration, persistence and pace and social functioning is apparently reflected in the ALJ's RFC assessment which determined that Plaintiff would have only occasional difficulty in maintaining attention and concentration, getting along with coworkers and peers, responding appropriately to changes in the work setting, and establishing realistic goals or making plans independently. Tr. 28.

In this case, the ALJ accorded "great weight" to the testimony of the medical expert and the state agency reviewing medical professionals and utilized the opinions of these nonexamining doctors to discount the opinions of examining medical providers Drs. Greene and Dalley. Tr. 31. However, as noted above, "[t]he opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 830. The ALJ also failed to specifically identify what aspects of the opinions of Drs. Greene and Dalley are discounted and did not provide proper rationale for limiting the weight given to those doctors. Tr. 31. Consequently, the ALJ's rejection of the opinions of Drs. Greene and Dalley is not supported by substantial evidence and is legally deficient. Based on the inadequacy of the reasons given by the ALJ for rejecting the opinions of Drs. Greene and Dalley, remand for reconsideration of those opinions is necessary in this case.

**B.    Step Four Determination**

Plaintiff has additionally contested the ALJ's step four determination in this case. ECF No. 14 at 11.

A claimant will be found not disabled when it is determined that she retains the RFC to perform either the actual functional demands and job duties of a particular past relevant job, or the functional demands and job duties of the occupation as generally required by employers throughout the national economy.

SSR 82-61.  "If a claimant shows that he or she cannot return to his or her previous job, the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988). Therefore, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite her identified limitations only after a claimant has established a prima facie case of disability by demonstrating she cannot return to her former employment. *Hoffman v. Heckler*, 785 F.2d 1423, 1425 (9th Cir. 1986).

As determined above, the ALJ erred in this case by failing to provide proper rationale for rejecting the opinions of examining medical professionals regarding Plaintiff's psychological limitations. *Supra*. Accordingly, this matter shall be remanded for additional proceedings.

On remand, the ALJ shall reconsider the opinions of Drs. Greene and Dalley. The ALJ shall reassess Plaintiff's psychological RFC, taking into consideration the opinions of Drs. Greene and Dalley, as well as all other medical evidence of record relevant to Plaintiff's claim for disability benefits. Prior to a new administrative hearing, Plaintiff shall additionally undergo a new consultative psychological examination. At the new administrative hearing, the ALJ shall elicit the testimony of a medical expert to assist the ALJ in formulating a new psychological RFC determination, and the new RFC assessment shall be presented to a vocational expert to determine if Plaintiff is capable of performing her past relevant work or any other work existing in sufficient numbers in the national economy.

## CONCLUSION

The Court has the discretion to remand the case for additional evidence and finding or to award benefits. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). The Court may award benefits if the record is fully developed and further administrative proceedings would serve no useful purpose. *Id*. Remand is

appropriate when additional administrative proceedings could remedy defects. *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989).  In this case, further development is necessary to remedy defects and for a proper determination to be made.  Accordingly, **IT IS ORDERED:**

1.      Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.      Defendant's Motion for Summary Judgment, **ECF No. 21**, is **DENIED**.

3.      Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered in favor of Plaintiff,** and the file shall be **CLOSED**.

DATED December 3, 2013.



_____

JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 13